UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL SMITH,

                Petitioner,                Case No. 1:12-cv-515

v.                                      Honorable Gordon J. Quist

MICHIGAN DEPARTMENT OF
CORRECTIONS PAROLE BOARD et al.,

                Respondents.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner has paid the filing fee. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because Petitioner has not exhausted available remedies and it does not raise a meritorious claim.

**Factual Allegations**

Petitioner Nathaniel Smith is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility. On February 26, 2004, Petitioner was sentenced in Van Buren County Circuit Court to a term of 23 months to 14 years for uttering and publishing, Mich. Comp. Laws § 750.249. On August 14, 2005, Michigan authorities released him on parole to the State of Illinois under an interstate corrections compact. On May 1, 2006, while he was in Illinois, he was arrested on a charge of "possession" and for violating his parole. (Br. in Supp. of Pet., docket #1, Page ID#8.) On June 1, 2006, the "possession" charge was dismissed *nolle prosequi*, but Petitioner remained in custody because of a warrant for his arrest in connection with the parole violation. (*Id.*)

On July 6, Petitioner contested extradition to Michigan, and an Illinois court held an extradition hearing to determine whether Petitioner should be turned over to Michigan authorities. Michigan authorities failed to act on the extradition inquiry, so Petitioner was released from custody. Petitioner subsequently reported to the Illinois Department of Corrections and Parole, and it discharged Petitioner "from parole and the underlying sentence." (*Id.*) Petitioner contends that Michigan parole authorities had knowledge of his whereabouts in June 2006, but "failed to comply with an extradition order and proceed with reasonable diligence to 'issue and execute' a warrant" for his arrest. (*Id.*)

Petitioner was arrested by Michigan authorities on November 27, 2006. He received an "informal" parole-violation hearing on January 29, 2007. After the hearing, his parole was revoked and he returned to prison in Michigan to continue serving his sentence for uttering and publishing.

Petitioner asserts that his present incarceration is "ILLEGAL" because:

> a) Petitioner is in custody in violation to United States Constitution of Laws, b) Said restraint places an atypical and significant hardship on Petitioner in respect to ordinary incidents of prison life, c) After Petitioner was criminally charged while in State of Illinois on parole and charges were subsequently dismissed . . . Michigan parole authorities failed to act on a custody request for extradition to State of Michigan for violation of parole, d) After Michigan parole authorities failed to act on said custody request for Petitioner's extradition to State of Michigan, the Michigan parole authorities waived jurisdiction over Petitioner and he was subsequently released from Cook County Jail then discharged by Illinois parole authorities from parole and sentence, and e) Michigan authorities were not authorized by any laws or MDOC policies to re-start Petitioner's sentence– subjecting Petitioner to further confinement.

(Pet., docket #1, Page ID#2.) In his brief in support of the petition, he also asserts that he is in custody in violation of the "Interstate Compact for Adult Offender Supervision," Mich. Comp. Laws § 3.1011 et seq. (which is "hinged on the Crime Control Consent Act," 4 U.S.C. § 112), and the right to due process under the Fourteenth Amendment. (Br. in Supp. of Pet. 1, docket #1, Page ID#10.)

## Discussion

I. Exhaustion

Before a court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d

480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138–39 (6th Cir. 1970). Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A federal habeas court will require exhaustion only if there is some "reasonable probability" that a state remedy is available. *Witzke v. Withrow*, 702 F. Supp. 1338, 1349 (W.D. Mich. 1988) (citing *Powell v. Wyrick*, 657 F.2d 222, 224 (8th Cir. 1981)).

It appears that Petitioner has not exhausted remedies available to him. Petitioner asserts that "he was and is not required to exhaust state remedies" because state remedies are not available. (Br. in Supp. of Pet., Page ID#13.) To the contrary, Petitioner may be able to challenge the revocation of his parole by filing a complaint for writ of habeas corpus in the appropriate state circuit court. *See* Mich. Comp. Laws § 600.4301 *et seq.*; *Triplett v. Deputy Warden*, 371 N.W.2d 862, 865 (Mich. Ct. App. 1985). Although the denial of such a writ is not appealable by right, the petition may be renewed by filing an original complaint for writ of habeas corpus with the Michigan Court of Appeals. *Id.* Denial of such a complaint by the Michigan Court of Appeals is subject to review by the Michigan Supreme Court. *See* Mich. Ct. R. 7.301.

Petitioner cites Mich. Comp. Laws § 600.4310, which prohibits habeas corpus relief to "[p]ersons convicted, or in execution, upon legal process, civil or criminal." *Id.* at § 600.4310(3). Petitioner falls in the prohibited category, but there is an exception for claims raising a "radical defect in jurisdiction," *i.e.,* "'an act or omission by state authorities that clearly contravenes an express legal requirement in existence at the time of the act or omission.'" *Moses v. Dep't of Corr.*,

736 N.W.2d 269, 273 (Mich. Ct. App. 2007) (quoting *People v. Price*, 179 N.W.2d 177, 180 (Mich. Ct. App. 1970)). Indeed, Michigan courts have reviewed state habeas petitions raising claims similar to Petitioner's. *See, e.g., Kenney v. Booker*, No. 304900, 2012 WL 1109047, at **2-3 (Mich. Ct. App. Apr. 3, 2012) (claim that parole was revoked without due process because the parole violation was not supported by sufficient evidence); *Wem v. Dep't of Corr.*, No. 297618, 2011 WL 2651858, at *4 (Mich. Ct. App. July 7, 2011) (claim that parole was revoked in violation of Michigan law, in violation of the parole board's operating procedures, and in violation of an interstate parole-supervision compact).

Petitioner also cites *Jackson v. Jamrog*, 411 F.3d 615 (6th Cir. 2005), in which the Sixth Circuit determined that state remedies were not available to a Michigan prisoner challenging the *denial* of his parole. *Id.* at 618. As noted by the court in *Jackson*, the Michigan Court of Appeals has held that "an appeal from the denial of parole is 'not allowed under the [Revised Judicature Act, Mich. Comp. Laws § 600.631].'" *Id.* (quoting *Morales v. Mich. Parole Bd.*, 676 N.W.2d 221, 225 (Mich. Ct. App. 2003)). The finding in *Jackson* is not applicable to Petitioner's case, however, because Petitioner does not challenge a denial of parole. Instead, he challenges the revocation of his parole, which may be reviewable in a state habeas petition.

In light of the foregoing, it appears that there is a means for Petitioner to present his claims in state court. Consequently, Petitioner's claims are subject to dismissal because they are not exhausted.

    II.    <u>Merits</u>

Alternatively, even if Petitioner's claims are exhausted, the petition is subject to dismissal because it fails to raise a meritorious habeas claim.

### A.     State Law

Petitioner claims that Michigan authorities arrested him in violation of the Interstate Compact for Adult Offender Supervision, Mich. Comp. Laws § 3.1011 *et seq*. He also claims that his arrest and subsequent incarceration were unlawful because he was released by Illinois parole authorities after Michigan authorities waived jurisdiction over him.

First, the Illinois Parole Board did not have power to release Petitioner from his Michigan sentence. The authority to discharge a Michigan parolee rests with the Michigan Parole Board, which will issue a discharge order only if the parolee has complied with all of the conditions of that parole. *See* Mich. Comp. Laws § 791.242(1); *Wem*, 2011 WL 2651858, at **5-6. Parolees continue to remain under the custody of the MDOC until the conditions of parole have been completed and a discharge order is issued and accepted. *See* Mich. Comp. Laws § 791.238(1) & (6); *Wem*, 2011 WL 2651858, at **5-6. Thus, the release by Illinois authorities did not release him from his Michigan sentence.

Second, while there is some case law indicating that Michigan parole authorities can waive jurisdiction over a parolee, the alleged waiver in Petitioner's case does not raise a meritorious habeas claim. Examining Michigan law, the Sixth Circuit opined that:

> When there has been a violation of the conditions of a parole, the parole authorities, if they desire to take advantage of it, should proceed with reasonable diligence to issue and execute a warrant for the arrest of the parolee. Failure to do so may result in a waiver of the violation and loss of jurisdiction.

*Greene v. Mich. Dep't of Corr.*, 315 F.2d 546, 547 (6th Cir. 1963). If Petitioner merely claims that Michigan authorities violated their authority under state law, however, he does not state a cognizable habeas claim. Under § 2254, the Court may grant relief to a state prisoner "only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Thus, a claim based solely on a violation of state law is not grounds for relief under § 2254.

### B. Due Process

To the extent Petitioner asserts that Michigan authorities violated his right to due process, his claim is cognizable, but it is without merit. Petitioner's claim that the state waived its jurisdiction arguably raises an issue of substantive due process. Some courts have held that where a state fails to act on a parole violation for a period of time, a subsequent attempt to enforce the violation may violate the parolee's right to substantive due process under the Fourteenth Amendment. *See Hawkins v. Freeman*, 195 F.3d 732, 743-44 & n.7 (4th Cir. 1999) (citing cases). The Fourth Circuit has summarized the origin and evolution of this type of claim as follows:

> Commonly traced in origin to the Fifth Circuit's decision in *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967), this theory employs the fictive notion that by prolonged failure to incarcerate a convict who "owes it time" (either original or "interrupted") a government may "waive its jurisdiction" to do so, thereby making any later incarceration one effected without jurisdiction and so a violation of due process. As originally formulated and applied in *Shields*, the theory seemed to require nothing more than prolonged inaction by government to prove a due process violation (presumably "substantive"). Undoubtedly sensing that if so understood the rule could not pass muster as one of constitutional stature, the Fifth Circuit took the occasion some six years later in *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973) (per curiam), to cabin in that aspect of the rule concerned with the required level of government culpability. Emphasizing that "lack of eager pursuit" or "lack of interest" is not enough, *Piper* held that "the . . . action must be so affirmatively wrong or [the] inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require [that the 'time owed'] be served . . . ." *Id.* at 246 (quotation omitted). It is *Piper*'s formulation that has since been used by courts applying this "waiver of jurisdiction" theory to constitutional due process claims.

*Hawkins*, 195 F.3d at 743-44.

The Sixth Circuit has applied the *Piper* formulation in several cases. *See, e.g., Patterson v. O'Dea*, No. 95-6561, 1996 WL 554564, at *1 (6th Cir. Sept. 27, 1996); *Christian v. Smith*, No. 90-6482, 1991 WL 85227, at *1 (6th Cir. May 20, 1991) (citing *Mobley v. Dugger*, 823 F.2d 1495, 1496-97 (11th Cir. 1987)). In *Patterson*, the petitioner was convicted and sentenced to a year in prison, but the circuit court released him on bond pending his appeal. Within a year of his release on bond, the petitioner was convicted of other crimes and another circuit court sentenced him to another twenty years of incarceration. That other circuit court also released him on bond pending his appeal in that case. The state appellate courts eventually upheld all of the petitioner's convictions and sentences, and one of the circuit courts revoked its appeal bond. The petitioner then returned to prison and served the one-year sentence issued by that court. When he finished that sentence in December 1990, he was released because one of his appeal bonds was still in effect. The latter bond was finally revoked a year later, however, and the petitioner started serving his twenty-year sentence in December 1991. He then filed a habeas petition claiming that the one-year delay between his release and his re-incarceration violated his right to due process. The Sixth Circuit rejected his claim because he failed to show that the state's actions were so "wrong" or "grossly negligent that requiring him to complete his twenty-year sentence would be unequivocally inconsistent with fundamental principals of liberty and justice." *Patterson*, 1996 WL 554564, at *1.

In *Christian*, Kentucky authorities charged the petitioner with escape from prison, but before they were able to take him into custody, he was arrested by California authorities on a DUI conviction. Kentucky authorities initially requested a detainer for petitioner, but then they withdrew the request after deciding not to pursue the prison-escape charge. The petitioner served a one-year sentence for the DUI conviction and was released in 1982. In 1985, while the petitioner was incarcerated on another conviction in Oregon, Kentucky authorities again requested a detainer

for the prison-escape charge. After the petitioner completed his sentence in Oregon, he was turned over to and incarcerated by Kentucky authorities. He then filed a habeas petition claiming that the release of the first detainer, and the three-year delay before issuance of the second detainer, constituted a waiver of jurisdiction by Kentucky authorities such that his incarceration violated his right to due process. The Sixth Circuit rejected his due-process claim, reasoning that the three-year delay was not so "wrong" or "grossly negligent" that it violated his right to due-process. *Christian*, 1991 WL 85227, at *1.

Applying the *Piper* standard to Petitioner's case, there is no indication that the state's failure to respond to Petitioner's extradition proceedings, or its failure to execute an arrest warrant for a period of approximately six months, was so wrong or grossly negligent that it would be inconsistent with the fundamental principles of liberty and justice to require Petitioner to serve the remainder of his sentence.

Furthermore, Supreme Court precedent decided after *Piper*, *Christian* and *Patterson* appears to require a more stringent substantive due process standard than the one used in the foregoing cases. As the Fourth Circuit explained in *Hawkins*:

> To keep things in constitutional proportion, we would have to see in [the parole board's actions] a mindless "abus[e of] power," or a deliberate exercise of power "as an instrument of oppression," [*Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)] (quotation omitted), or power exercised "without any reasonable justification in the service of a legitimate governmental objective." [*County of Sacramento v. Lewis*, 118 S. Ct. 1708, 1716 (1998)].

*Hawkins*, 195 F.3d at 746. The Sixth Circuit has, in dicta, acknowledged this more stringent standard in the context of a delay in correcting a sentencing error. *See United States v. Sanders*, 452 F.3d 572, 577 n.4 (6th Cir. 2006) (citing *Hawkins* and noting that, if the petitioner had raised a substantive due process claim, it would be meritless because he "cannot show the bad faith or

deliberate misuse of power necessary to satisfy the *Lewis* test"). If Petitioner's claim does not satisfy the standard in *Piper*, then it certainly cannot satisfy the more stringent standard in *Lewis*. Indeed, there is no indication that Petitioner's re-incarceration was the result of bad faith or the deliberate misuse of power. For the foregoing reasons, therefore, Petitioner does not raise a meritorious *substantive* due process claim.

To the extent Petitioner asserts a *procedural* due process claim, he must first show that he was deprived of a protected interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court recognizes that a parolee has a protected liberty interest in continued release on parole, subject to the conditions of that release. *Morrissey v. Brewer*, 408 U.S. 471, 479-80 (1972).[1] To protect that interest, due process requires, among other things: (1) a preliminary hearing "as promptly as convenient after arrest . . . to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions"; and (2) a revocation hearing, if desired by the parolee, "within a reasonable time after the parolee is taken into custody" to determine whether a violation has occurred that warrants revocation of parole. *Id.* at 485-89.

As indicated, the foregoing requirements apply *after* the parolee has been arrested or taken into custody under the warrant. *See id.*; *see also Moody v. Daggett*, 429 U.S. 78, 86-87 (1976) (noting that "the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant"); *Kenner v. Martin*, 648 F.2d 1080 (6th Cir. 1981) (interpreting *Moody* as holding that "a prisoner has no right to a hearing prior to the execution of the warrant").

---

[1] Petitioner argues that his present confinement imposes an atypical and significant hardship, presumably invoking the Supreme Court's holding in *Sandin v. Conner*, 515 U.S. 472 (1995) that a change in prison conditions imposing an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" triggers a right to procedural due process. *Id.* at 486-87. Petitioner need not rely on *Sandin*, however, because there is no question that the revocation of his parole implicates a right to procedural due process.

In *Bennett v. Bogan*, 66 F.3d 812 (6th Cir. 1995), however, the Sixth Circuit recognized that a delay *before* executing a parole-violator warrant may constitute a due-process violation if it results in prejudice to the parolee. *Id.* at 818; *see also Bowen v. Jones*, 463 F. App'x 514, 519 (6th Cir. 2012). Absent prejudice to the parolee, however, the Sixth Circuit found no due process violation. *Bennett*, 66 F.3d at 818–19. Similarly, in *Gaddy v. Michael*, 519 F.2d 669 (4th Cir.1975), upon which the court in *Bennett* relied, the Fourth Circuit reasoned that the "[m]ere lapse of time or delay, particularly where the delay is in the *execution* of the warrant, without more, will no more violate the due process right of a parolee than will a delay of trial in the ordinary criminal case offend the 'speedy trial' provision of the Constitution[.]" *Id.* at 673 (emphasis added). Petitioner does not assert that he was prejudiced by any delay in execution of the parole-violator warrant. Therefore, Petitioner does not raise a meritorious procedural due process claim.

### III.   Statute of Limitations

Even if Petitioner had raised meritorious, exhausted claims, the petition is clearly barred by the one-year statute of limitations in 28 U.S.C. § 2244(d)(1). Petitioner challenges proceedings that occurred as late as January 2007, yet his petition was filed in May 2012. Petitioner offers no explanation for the five-year delay between his revocation proceedings and the filing of his petition, and to the extent that equitable tolling of the limitations period is available, *see Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009), Petitioner has not raised that issue or alleged any facts or circumstances that would warrant its application in this case.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because the claims have not been exhausted and because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  August 13, 2012                                             /s/ Gordon J. Quist                    
                                                                GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE